UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

JANE A. FLIS and RICHARD J. FLIS, JR., )
                                        )
              Plaintiffs,               )
                                        )
       vs.                              )        1:03-cv-1567-JDT-TAB
                                        )
KIA MOTORS CORPORATION,                 )
                                        )
              Defendant.                )

**ENTRY ON PLAINTIFFS' MOTION FOR A NEW TRIAL (DOC. NO. 202)[1]**

Plaintiff Jane A. Flis was severely and permanently injured in a rollover incident when she was driving her Kia Sportage.  Ms. Flis and her husband, Richard J. Flis, (collectively the "Flises") sued Kia Motors Corporation alleging that it was liable for defectively designing the roof of the Kia Sportage.  The case was tried to a jury which found in favor of Kia and against the Flises on Jane Flis's product liability claim and Richard Flis's loss of consortium claim.  The jury reached their verdicts on June 15, 2005.  Following the return of the verdicts and a poll of the jury, the court allowed counsel for the parties to ask the jury questions about the case off the record and in the jury room.

Judgment was signed and dated on June 15, 2005, and then entered on the docket on June 16, 2005.

---

[1]  This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

On June 30, 2005, the Flises filed their Motion for A New Trial pursuant to Rule 59. They contend that they are entitled to a new trial because of juror non-disclosure, deceit, and misconduct during voir dire and resulting bias against them. They also assert that the giving of the governmental compliance instruction constituted reversible error. The Flises filed a Notice of Appeal on July 15, 2005. The court held a hearing on the motion for new trial on August 21, 2006, at which time the jury foreperson was examined under oath and counsel made oral arguments. The court presumes a familiarity with this case. Having carefully considered the matters presented, the court rules as follows:

## I.    DISCUSSION

Kia challenges the timeliness of the motion for a new trial. However, the motion was timely filed. A Rule 59 motion for a new trial is timely if filed within ten days after the entry of the judgment—the date on which the judgment was docketed. *See Borrero v. City of Chicago*, 456 F.3d 698, 699 (7th Cir. 2006); *Laborers' Pension Fund v. A & C Envtl., Inc.*, 301 F.3d 768, 775 (7th Cir. 2002) ("it is the entry date as listed in the docket that triggers the time for the filing of the post-trial motion, not the date the judgment was signed"). In computing the ten day period, intermediate Saturdays and Sundays are excluded. Fed. R. Civ. P. 6(a); *Laborers' Pension Fund*, 301 F.3d 775 n.5. Although the judgment was signed and dated by the Clerk on June 15, 2005, judgment was not entered on the docket until June 16, 2005. The Flises filed their motion for new trial on June 30, 2005. Excluding the two Saturdays and Sundays, the Rule 59 motion was due on the date it was filed. So the Flis' motion was timely.

2

The court has jurisdiction to decide the motion for new trial. A timely filing of a notice of appeal generally confers jurisdiction on the court of appeals and divests the district court of jurisdiction over aspects of the case involved in appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). However, the filing of a notice of appeal after a timely filed Rule 59 motion but before a decision on that motion does not divest the district court of jurisdiction. Fed. R. App. P. 4(a)(4)(v); *Griggs*, 459 U.S. at 59-60. Such a notice of appeal becomes effective when the order disposing of the Rule 59 motion is entered. Fed. R. App. P. 4(a)(4)(B)(i). The Flises filed their notice of appeal and then timely filed their motion for new trial. Therefore, this court has jurisdiction and may decide the motion.

Kia contends that the motion should be denied because the court mandated that any information learned in interviewing jurors following trial could not be used as a basis for a post-trial motion. The Flis' motion does not violate a firm rule. At best, the court devised an informal agreement or guideline about the discussion with the jurors. If indeed there is juror bias that would necessitate a new trial, the undersigned will not ignore such bias just because of this informal understanding. Justice would not be served by disregarding such bias.

The Flises contend they are entitled to a new trial because of juror deceit and misconduct during voir dire and that the resulting juror bias against them. They allege that following counsels' post-verdict informal discussions with the jury in the jury room, the foreperson, Norman Jones, claimed to have helped defend products liability cases

for over 40 years.  They argue that proper disclosure and responses of this during voir dire would have given them a for cause challenge to Mr. Jones.

The Plaintiffs offer the affidavit of their counsel, Joby J. Raines, in support. According to Mr. Raines, following counsels' post-verdict discussions with the jury, he observed Mr. Jones approach Kevin Schiferl, Kia's counsel, and overheard what was said.  Mr. Raines states that Mr. Jones said, "Do you want to know why I was the foreperson?"  (Aff. Joby J. Raines ¶¶ 4, 5.)  After pausing for a moment, Mr. Jones allegedly said, "Because I've helped defend product liability cases for over 40 years." (*Id.* ¶ 5.)  According to Mr. Raines, upon entering the courtroom and out of the jurors' presence, he asked Mr. Schiferl, "did he just say what I think he said?"; Mr. Schiferl nodded his head in agreement and said, "Yeah" and then Mr. Raines sought clarification by asking "Did he just say that he helped defend product liability cases for over 40 years?" and Mr. Schiferl answered, "Yeah, that's what he said."  (*Id.* ¶ 6.)  Mr. Raines states that he then clearly said to Robert Palmer, lead counsel for Plaintiffs who was standing in the back of the courtroom,"the foreperson of the jury just told Kevin that he helped defend product liability cases for over 40 years.  Isn't that what he said, Kevin?" and Mr. Schiferl again answered, "Yeah, he did.  (*Id.* ¶ 7.)

Mr. Schiferl recalls the exchange with Mr. Jones differently.  According to Mr. Schiferl, he and Mr. Jones passed by each other as Schiferl was leaving the jury room. Mr. Schiferl states that Mr. Jones asked him, "so you went to Purdue, huh?"  (Defs.' Verified Resp. Opp'n Pls.' Mot. New Trial 4.)  Then, Mr. Schiferl asked Mr. Jones how he came to be selected as the foreperson.  Mr. Jones answered that he was not sure,

but thought it might have had something to do with the fact that he had been involved in the insurance industry for 40 years, including the "handling" of product liability claims. (*Id.* at 4-5.)  Mr. Schiferl denies that Mr. Jones claimed to have helped "defend" product liability cases for over 40 years.  (*Id.* at 5.)

At the hearing on Plaintiffs' Motion for New Trial, the court and counsel examined Mr. Jones under oath.  Mr. Jones did not recall saying anything to Mr. Schiferl or in the presence of any of the lawyers to the effect of "Did they want to know why he was the foreperson?"  Nor did he recall discussing with anyone why he came to be the foreperson.  Mr. Jones testified that the other jurors chose him to be foreperson, but he did not know why.  When questioned by the court, Mr. Jones denied ever having said that he had helped defend product liability cases for over 40 years, or anything to that effect.  Mr. Jones added that he had said in court (referencing voir dire), that he had been in the insurance business and had sold product liability insurance for 40 years.[2] He testified that he did not mention his understanding of product liability litigation when he was chosen as foreperson but only said he had been in the insurance business for 40 years.  He added that during the jury deliberations he never discussed his experience with product liability insurance.

Mr. Jones was questioned at the August 21 hearing about his participation, if any, in products liability litigation.  He denied ever having defended any case or even

_____

[2]  As the transcript of voir dire reveals, Mr. Jones's recollection is mistaken.  Although he disclosed that he owned an insurance company and that 60% of his business was commercial, he did not mention that he handled products liability insurance.  He was not specifically asked whether he handled such insurance, though.  (Tr. Jury Voir Dire, June 6, 2005, at 37-39.)

having been associated with one.  Mr. Jones testified that he just sold policies; he never

had any financial stake in any litigation involving a company's insurance, never

participated in litigation, never filed claim reports, and never took any class or seminar

on products liability litigation.  When asked whether he had believed during jury

selection that he could be fair and impartial, Mr. Jones answered "absolutely."  He also

testified that the jury did not discuss the case during the trial and that during

deliberations, they did discuss the case, the evidence, and the court's instructions.

One person may think he or she heard what another person said, but instead that

person actually may have misheard what was said.  That seems to have occurred in this

case following the informal discussions with the jury in the jury room.  Mr. Raines and

Mr. Schiferl have two very different versions of what they claim to have heard (or not to

have heard) Mr. Jones say to Mr. Schiferl.[3]  Counsel seem to agree, though, that at the

time in question, Mr. Jones was addressing Mr. Schiferl, not Mr. Raines, and Mr. Jones

and Mr. Schiferl were behind Mr. Raines.  Mr. Schiferl very well may have been better

able than Mr. Raines to hear what Mr. Jones actually said.  Although Mr. Jones

demonstrated some misrecollection—he testified in reference to voir dire that he

disclosed he handled products liability insurance and the transcript reveals he did

not—he unequivocally denied ever having said that he had helped defend product

liability cases for over 40 years.  Mr. Jones's testimony is supported by Mr. Schiferl's

denial that Mr. Jones had said he helped "defend" product liability cases for over 40

---

[3]  Their recollections are reflected in the parties' filings of June 30, 2005, and July 12, 2005, and thus documented not long after the conversation occurred.

years.  Furthermore, Mr. Jones's testimony that when chosen as foreperson he did not mention his understanding of product liability litigation but only that he had been in the insurance business for 40 years tends to corroborate Mr. Schiferl's account of Mr. Jones's response to his question about how Mr. Jones was chosen as foreperson. According to Mr. Schiferl, Mr. Jones responded that he was unsure, but thought it might have had something to do with his involvement in the insurance industry for 40 years, including "handling" product liability claims.  Having considered the evidence and having observed Mr. Jones testify, the court finds that the Defendant's version of the exchange between Mr. Jones and Mr. Schifel is more likely accurate than the Plaintiffs' version.

While Plaintiffs offer Mr. Raines's statement that when he asked Mr. Schiferl "did he [Jones] just say what I think he said?" and Mr. Schiferl agreed, there is insufficient evidence to find that Mr. Schiferl and Mr. Raines were in agreement as to what Mr. Raines thought he heard Mr. Jones say.  It also seems that there was subsequent miscommunication between Mr. Raines and Mr. Schiferl about what Mr. Jones had said. Mr. Jones's testimony at the August 2006 hearing supports Mr. Schiferl's view of what Mr. Jones had said—that he had handled products liability claims.  As stated, Jones denied having said that he had helped defend product liability cases for over 40 years. And he denied ever having defended or participated in a product liability case—or even being associated with one.   He testified, instead, that he had been in the insurance business and sold product liability insurance for 40 years.

Under *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), to obtain a new trial the Plaintiffs must show:  First, that Mr. Jones failed to honestly

answer a material question on voir dire; and second, that an honest response would have provided a valid basis to challenge the juror for cause. *See id.* at 554; *United States v. Medina*, 430 F.3d 869, 875 (7th Cir. 2005).

The Flises point to the following voir dire questions to support their claim of juror misconduct:  First, Mr. Palmer asked:

> I didn't – and I assume, given all the answers that you've given here, that no one's ever been involved in the broad category of what we've called here a products liability suit.  That's kind of a broad generic name. Nobody's been in a products liability suit?

(Tr. Jury Voir Dire 88.)  No one in the venire indicated that he or she had been in a products liability suit.  Mr. Palmer then asked:

> Let me flip that question.  I didn't see any hands.  Anybody here who's already leaning – let me back up – that you wouldn't want you as a juror, if I were Mr. or Mrs. Flis, because there's something you haven't told me or told us that would prevent you from being fair and listening to all the evidence in their case?

(*Id.* at 112-13.)  Immediately thereafter he said, "Okay.  I see no hands."  (*Id.* at 113.)

The Plaintiffs also point to the following discussion by defense counsel, Mr. Schiferl:

> I think we heard Ms. Conner volunteer – and appreciate this ma'am – about – wasn't direct answer to your question, but issues of prejudice that were not asked about that came up.  Do any of the 27 of you, having heard the questions already by the Judge a little bit about this case and questions by Mr. Palmer, have any areas of prejudice that you feel that you bring into this courtroom today that we've not already talked about; that I haven't heard or that Mr. Palmer and his clients haven't heard?

8

Okay.  I think we've asked a lot of questions.  Again I just want to keep that on the table.  If there is something that comes to mind, would you please raise your hands and let me know?

(*Id.* at 114.)  No one raised their hands or otherwise responded affirmatively.

The Plaintiffs contend that Mr. Jones failed to honestly answer a material question on voir dire because he failed to disclose that he helped defend products liability cases for 40 years.  The record before the court does not support the conclusion that Mr. Jones helped defend products liability cases for 40 years.  The court finds credible Mr. Jones's testimony that he has not defended any product liability case or even been associated with one.  He just sold insurance policies, including commercial policies and polices insuring against products liability.  The fact that Mr. Jones sold commercial policies of insurance was disclosed during voir dire and an area ripe for further development and questioning by counsel.  This area was not pursued further, however.  It has not been shown that Mr. Jones concealed any material fact or gave any dishonest answer on voir dire.

Even assuming Mr. Jones helped defend products liability cases for 40 years, there still has been no showing that he gave a false or dishonest answer to the questions about being fair, listening to the evidence, or having prejudices.  He honestly could have believed that he could be fair and listen to the evidence in the case on trial and not have any prejudices despite helping to defend products liability cases for 40 years.  Indeed, when questioned at the August 2006 hearing about whether he believed during jury selection that he could be fair and impartial, Mr. Jones answered

9

"absolutely."  And as for Mr. Palmer's first question quoted above, given the context, Mr. Jones reasonably could have understood it as asking whether he had been a party to a products liability suit.  The preceding questions and answers all concerned whether jurors or close family members had been involved as a party to a lawsuit.  (Tr. Jury Voir Dire 83-88.)  There is no evidence that Mr. Jones or a close family member has ever been a party to a products liability suit.  Instead, the only evidence before this court is Mr. Jones's testimony that he has never defended, participated in, or been associated with any products liability case.

But even assuming that Mr. Jones concealed a material fact or gave a dishonest answer during voir dire, the Plaintiffs have not shown that an honest answer would have given them a valid basis to challenge Mr. Jones for cause.  The Supreme Court has indicated:  "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough Power Equip.*, 464 U.S. at 556.  As the Seventh Circuit has recognized, the question is not limited to what is a juror's belief, but whether a juror's belief "would somehow impede [him] in giving due weight to the evidence and following the judge's instructions."  *Thompson v. Altheimer & Gray*, 248 F.3d 621, 626 (7th Cir. 2001).  The mere fact that Mr. Jones had helped defend products liability claims would not automatically disqualify him for cause based on bias or impartiality.  Nothing in the record before the court suggests that Mr. Jones could not be fair and impartial or could not follow the court's instructions on the law and listen to all the evidence.  To the contrary, when the venire was asked on voir dire whether there was anything that would

10

prevent them from being fair and listening to all the evidence in the case, Mr. Jones's

response—by not raising his hand—indicated that he could be fair and listen to the

evidence.  There has been no showing that any belief, bias or prejudice of Mr. Jones

precluded him from being a fair and impartial juror and reaching a just verdict based on

the evidence in the case and the law as instructed by the court.  Therefore, the Plaintiffs

are not entitled to a new trial based on alleged undisclosed juror bias.

The Flises also argue that the giving of Final Jury Instruction 21 on the

governmental compliance/state-of-the-art issue was reversible error.[4]  They contend

that the Indiana Court of Appeals got it right in *Schultz v. Ford Motor Co.*, 822 N.E.2d

645 (Ind. Ct. App. 2005), when it concluded that giving a similar governmental

---

[4]  The challenged instruction reads as follows:

**FINAL JURY INSTRUCTION 21**
The Defendant, Kia Motors Corporation, has alleged that the 1998 Kia Sportage was manufactured in conformity with the state of the art and complied with applicable codes.  Kia Motors Corporation has the burden of proving this allegation.
If you find that Kia Motors Corporation has proved by a preponderance of the evidence that before the 1998 Kia Sportage was sold, the product:
(1)    was in conformity with the generally recognized state of the art applicable to the safety of the product at the time the product was designed or manufactured; or
(2)    complied with applicable codes, standards, regulations, or specifications established, adopted, promulgated, or approved by the United States or by Indiana, or by an agency of the United States or Indiana,
then you may, but are not required to, infer the presumed fact that the 1998 Kia Sportage was not defective and that Kia Motors Corporation was not negligent.
This means that if you find the 1998 Kia Sportage was in conformity with the generally recognized state of the art or complied with applicable regulations, you may either (1) determine that the vehicle was not defective and that Kia Motors Corporation was not negligent and find in favor of Kia Motors Corporation on Plaintiffs' claims; or (2) if Plaintiff Jane Flis has introduced evidence tending to show that the 1998 Kia Sportage was in a defective condition unreasonably dangerous to any user or consumer, as I have previously defined those concepts, despite that compliance or conformity, then you may find that Jane Flis has rebutted (that is, erased or overcome) the above-mentioned presumption of non-defectiveness and non-negligence.
(Tr. Final Jury Ins. June 15, 2005, at 19-20.)

11

compliance instruction premised on Indiana Pattern Jury Instruction 7.05(D) and Indiana Code § 34-20-5-1 amounted to reversible error.  The court of appeals held that the instruction did not properly reflect the mandatory presumption found in Indiana Code § 34-20-5-1 and its lack of evidentiary value.  *Id.* at 655.  This court disagreed and held that the "strong legislative policy embodied in § 34-20-5-1 can only be given effect if an instruction based on Indiana Pattern Instruction 7.05(D) is proffered at trial."  *Flis v. Kia Motors Corp.*, No. 1:03-cv-1567-JDT-TAB, 2005 WL 1528227, at *6 (S.D. Ind. June 20, 2005).

The Indiana Supreme Court has just issued its decision in *Schultz v. Ford Motor Co.*, No. 49S02-0508-CV-376, slip op. (Ind. Dec. 5, 2006)—a decision on which this court waited before ruling on the instant motion.  *Schultz* holds that "a presumption is properly given 'continuing effect' under the last sentence of Indiana Evidence Rule 301 by the trial court instructing the jury that when a basic fact is proven, the jury may infer the existence of a presumed fact."  *Id.* at 11.  In so holding, the Court cited this court's Entry on Governmental-Compliance and State-of-the-Art Instruction in this case.  *Id.* at 11.  Therefore, under Indiana law as established by the Indiana Supreme Court in *Schultz*, the giving of Final Jury Instruction 21 in this case was not error.

Lastly, the Plaintiffs assert that federal law and the Supremacy Clause prohibited the court from instructing the jury that Kia's compliance with FMVSS 216 constitutes a presumptive defense to the products liability claim.  However, they did not object at trial to Final Jury Instruction 21 on this specific ground and thus have waived it as an objection post-trial.  *See, e.g.*, *Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 730 (7th

12

Cir. 2002) ("to preserve the objection, the party must state the same grounds when objecting to the jury instruction as it does in its motion for a new trial") (citing 9A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure 2d § 2554 (2d ed. 1997)).  In any event, the court finds no preemption concerns here: Final Instruction No. 21 creates no conflict with the Federal Safety Act or the Federal Motor Vehicle Safety Standards.[5] *See Schultz*, No. 49S02-0508-CV-376, slip op. at 14-16.

## II.    CONCLUSION

This case arises from a tragic accident that has forever changed the Flises' lives. But, for the foregoing reasons, the Plaintiffs' Motion for New Trial is **DENIED**.

ALL OF WHICH IS ENTERED this 8th day of December 2006.

_____

John Daniel Tinder, Judge
United States District Court

---

[5]  Perhaps the result would be different were the jury instructed that if they found Kia complied with the FMVSS then they were required to infer that the vehicle was not defective and Kia was not negligent.  But, as noted, the instruction did not say that.

13

Copies to:

Robert M.N. Palmer
Scott A. Smith
Joby J. Raines
THE LAW OFFICES OF PALMEROLIVER, P.C.
raines@palmerlaw.com
palmer@palmerlaw.com
ssmith@palmerlaw.com

Timothy J. Kennedy
MILLER MULLER MENDELSON & KENNEDY
tkennedy@millermuller.com

Kevin C. Schiferl
Randall R. Riggs
Robert B. Thornburg
LOCKE REYNOLDS, LLP
kschiferl@locke.com
rriggs@locke.com
rthornburg@locke.com

Nathan H. Bjerke
Richard A. Bowman
Fred J. Fresard
BOWMAN AND BROOKE, LLP
150 South Fifth Street, Suite 2600
Minneapolis, Minnesota 55402

14